SELDEN (ALEXANDER v.). See Case No. 173.

SELDEN (FLETCHER v.). See Case No. 4,866.

---

## Case No. 12,639.

### SELDEN v. HENDRICKSON et al.

[1 Brock. 396.] [1]

Circuit Court, D. Virginia. Nov. Term. 1819.

BOTTOMRY—NECESSARY REPAIRS—RESIDENCE OF OWNER.

A vessel belonging to the port of Richmond. in Virginia, may be hypothecated in the port of

[1] [Reported by John W. Brockenbrough, Esq.]

New York, by the master, for necessary repairs, if the owner has no agent in New York. But the money for which the bottomry bond is given, must be advanced on the faith of the bottom, and must be necessary to enable the vessel to prosecute her voyage.

[Cited in The Eureka, Case No. 4,547; The Albany, Id. 131; Morrison v. The Unicorn, Id. 9,849.]

[Cited in Leddo v. Hughes, 15 Ill. 44.]

[Appeal from the district court of the United States for the district of Virginia.]

The appellees, John Hendrickson and George Pryor, merchants in the city of New York, filed their libel in the district court of the United States, at Richmond, against the schooner Richmond, her freight, tackle, and apparel, and Cary Selden, the owner of the said vessel, living in the city of Richmond, to recover the amount of a bottomry bond, executed by Joseph P. Colvin, master of the said schooner Richmond, of the port of Richmond, in favour of the libellants. The bottomry bond was dated on the 17th of February, 1816, and was for the sum of $1300, and purported to have been executed in consideration of advances made by Hendrickson & Pryor, for the purchase of necessaries for fitting out the vessel for sea. The libellants charged in their libel, that the advances thus made by them on bottomry, were indispensable to enable the vessel to prosecute her voyage. Cary Selden, in his answer, insisted, that Colvin had no right to hypothecate the vessel in the port of New York, that not being a foreign port in relation to the vessel, or to himself, as the owner; that the right of the master to hypothecate the vessel under his command, in a foreign port, was a right resulting from the necessity of the case, there being no opportunity in such foreign port to make application to the owner for requisite advances; but the reason of the principle had no application to this case, since, through the medium of the mail, the respondent was easily accessible to the application of the master. But if, by the laws and principles of admiralty, the master of a vessel, belonging to the port of Richmond, could hypothecate the vessel for necessary repairs, &c., in the port of New York, the respondent insisted, in the second place, that the amount alleged to have been advanced, was unreasonable and enormous, and called for full proof, that such advances were necessary, and were applied for the use of the vessel, &c. The deposition of the attesting witness to the bottomry bond, proved the execution and delivery of the instrument, and the deposition of John H. Watson, a clerk in the store of Hendrickson & Pryor, stated, that all the articles charged in the account exhibited, (amounting in the aggregate to the sum for which the bond was given,) were delivered by Hendrickson & Pryor, to Colvin, for the use of the schooner Richmond, and that they were charged at the usual New York prices; that at the time they were furnished, the vessel was in the port of New York, and unseaworthy, having encountered a storm in her voyage to New York, in which she lost her cables and anchors, and had her quarter boards stove in, and sustained other material injury. The district court rendered a decree in favour of the libellants, for the whole balance due on the bottomry bond, with interest at the rate of 7 per cent., (that being the rate of interest allowed in the state of New York,) and their costs [case unreported]; and from this decree the respondent, Selden, appealed to this court.

MARSHALL, Circuit Justice. This case arises on a bottomry bond, given by the master of the schooner Richmond, to the appellee, for repairs done on that vessel. The vessel belonged to the port of Richmond, at which place the owner resided, and the repairs were made, and the money advanced, in New York.

The question, whether the master of an American vessel may hypothecate her for necessary repairs in a port of the United States, is one of considerable importance to commerce, which has never yet, I believe, been directly decided. In considering it, the relative situation of the owner and master must be taken into view. The owner remains generally on land, engaged in those occupations to which his interest or his inclination may lead him. The care and management of his vessel, while navigating the ocean, is entrusted to the master. It is generally of much importance that the voyage should be prosecuted, and that it should be prosecuted without great delays. A ship, navigating the ocean, is exposed to perils which frequently disable her from prosecuting her voyage, without repairs, or necessary supplies. When these circumstances are taken into consideration, and when it is recollected that the master is appointed by the owner, it would seem reasonable to expect that every power necessary for the performance of the voyage, should be vested in him by his appointment; and might be exercised, wherever the owner himself, or his known and authorized agent, could not be consulted, without endangering or retarding the voyage.[2]

In conformity with this principle of reason, is the maritime law of all nations. It is stated to be the law not only by Valin, Emerigon, and other foreign writers, but is expressly laid down to be the law of the admiralty, and the law of England, in Bridgeman's Case, reported by Hobart (page 11) as admitted in the Case of Balsam, reported in Lord Raymond, as well as in several modern cases, and is recognized by Parke, Marshall, Jacobson, Abbot, Livermore, and other modern compilers. Upon

_____
[2] The Aurora, 1 Wheat. [14 U. S.] 96; 3 Con. Rep. Sup. Ct. U. S. 501.

this point there is no doubt. In the absence of the owner, the master is in the place of the owner, and is, by his appointment, impliedly clothed with power to do all that is necessary for the success of the voyage, and to bind the vessel, or the owner, or both, by his engagements. The difficulty is, to decide in what situations the absence of the owner is such, as to·authorize the master to act independently of his special orders. Must the vessel, if belonging to an American, be without the jurisdiction of the United States? Or is it enough, that she be without the jurisdiction in which the owner resides?

As the same motives exist everywhere for empowering the master to act, in the absence of the owner, during the voyage, the laws of the different nations of Europe, on this subject, resemble each other, very nearly; and, indeed, on all maritime questions, the decisions of one country have been very much respected in the courts of every other. They originate in the same source, and have preserved considerable uniformity. There is scarcely any thing on the subject which is entitled to more respect than the marine ordinance of Louis XIV. It was compiled with great care, by the first civilians of the nation, and with a view, as we are told, not only to all the ancient codes which are extant, but also to the customs and laws of all the maritime states of Europe. By that ordinance, the master is not allowed to hypothecate the vessel "in the place where the owner resides," and these words are construed, in France, to comprehend the whole district, but not the whole country. In his treatise on Agencies, Mr. Livermore says: "And upon the construction of these words, 'le lieu de la demeure des proprietaires,' the place of residence of the owners, Emerigon observes, that the whole district, or bailiwick, is to be considered the owner's place of residence, but that, if the vessel puts into a neighbouring port, in another district, this is not the owner's place of residence. Therefore, where the master of a vessel from Toulon, gave a bottomry bond at Marseilles, it was determined that he had authority to do so."[3] Valin says, the master may hypothecate the ship while on her voyage, and in a place where neither the owner, nor his correspondents, reside. This decision seems consonant to the principles of reason. The power of the master to act, in the absence of the owner, is a rule of convenience, founded on the necessity of the case. This necessity depends, not merely on the vessel's being within the same jurisdiction with the owners, but on its being so near them, that application may be made to them without material injury to the voyage. In small territories, the whole country may, without inconvenience, be considered as the place of residence of the owners, but in large territories, as in Russia, the rule would often be defeated by encumbering it with such a condition. In such countries, the power of the

master must commence with the voyage, or must commence after passing some line within the limits of the empire, or the success of the voyage must be greatly endangered.

In England the same principle has been adopted, but has been so modified as to suit the situation of that country. The master has the power to hypothecate the vessel, or to bind the owners personally for repairs done abroad, but not at home. This is the general principle of English law, and is precisely the same with that which is contained in the marine ordinance of Louis XIV. When the vessel is abroad, and when at home, has been, in England, as well as France, a question for construction. This question has arisen in cases, where the repairs were actually made beyond the seas, and, generally, in a foreign country; and the language used by the court is adapted to the case. It has never arisen, I believe, in a case where an English vessel was hypothecated, by the master, in a distant port of England; and it has never, I believe, been decided, that such hypothecation would not be valid. Those writers, who lay down the English law, understand the principle to be, but do not say expressly that it is, that every port of England is to an English vessel, a home port. That principle, however, is not expressly affirmed by any writer, nor by any judge, so far as the cases have come under my inspection. Marshall, after stating the practise of allowing the master to hypothecate the ship in a foreign country, says: "And it is essential to the safety of the ship, and the success of the voyage, that the master, in the absence of the owners, should have this power, which is indeed, by the marine law, implied in his appointment. But as the owners are presumed to give entire authority to the master, only in their absence, and for such affairs as they cannot themselves conveniently transact, he is not, in fact, master, till after he sets sail. Till then, he is subject to their orders, and they have the power of dismissing him at pleasure; till then, therefore, he can transact no business of importance but under their immediate directions. Hence, if the master borrows money on bottomry in the place where the owners reside, without their express authority, it can only affect his own interest on board."[4] Nothing in this passage, or in any other part of Marshall, so far as I have examined him, would indicate, that the power of the master, commences only when he leaves England, and cannot be exercised, even in a port of England, other than the home port of the vessel. Mr. Abbot says: "It is obvious, that a loan of money upon bottomry, while it relieves the owner from many of the perils of maritime adventure, deprives him also of a great part of the profits of a successful voyage;" (this, I presume, alludes to those cases of bottomry, where more than legal interest is reserved;) "and, therefore," continues

---

[3] 1 Liverm. Princ. & Ag. p. 171, c. 5, § 4.

[4] 2 Marsh. Ins. 740; The Lavinia v. Barclay [Case No. 8,125].

Mr. Abbot, "in the place of the owners' residence, where they may exercise their own judgment on the propriety of borrowing money in this manner, the master of the ship is, by the maritime laws of all states, precluded from doing it, so as to bind the interest of the owners without their consent." "The meaning of the words, 'place of residence,' ('la demeure des proprietaires,') has given occasion to some questions in France. With us, I apprehend, the whole of England is considered, for this purpose, as the residence of an Englishman; at least before the commencement of a voyage."[5] Mr. Abbot cites no authority for supposing, that the whole of England would, for this purpose, be the residence of an Englishman. Nor have I been able to find any express authority for it. He gives it as his own speculative opinion, and he gives it with considerable doubt, for he adds, "at least before the commencement of a voyage." In the case of Watkinson v. Bernadiston, 2 P. Wms. 367, it is said: "But it is true, that if at sea, where no treaty, or contract can be made with the owner, the master employs any person to do work on the ship, or to new rig, or repair the same, this, for necessity and encouragement of trade, is a lien upon the ship; and, in such case, the master, by the maritime law, is allowed to hypothecate the ship." These words would rather seem to include a port in England, into which an English vessel, damaged during her voyage, might put for repair. Our countryman, Mr. Livermore, takes the same view of the subject with Mr. Abbot.

I am inclined to believe, that on this subject, the courts of admiralty in England, would proceed according to the general principles of the maritime law. The cases in the books, where they have been restrained, by prohibition, would seem to justify the inference, that, if not so restrained, they would have granted the relief which was sought, and in no case that I have seen, has a prohibition been awarded to a court of admiralty, proceeding on a bottomry bond, given by the master, in a distant English port, after the commencement of the voyage. In fact, I can conceive no reason, why a master may not, for the success of the voyage, hypothecate the vessel to secure a debt, carrying only legal interest, in any case where he might bind the owners personally: and it has been determined, that he may bind them personally by his contract, for repairs made in England, at a port where they do not reside.

Although it has never been decided affirmatively, that every port in England is, for this purpose, the residence of an English owner, it has been decided negatively, that a colonial port, or a port in Ireland, or a port in Jersey, is not a home port. On the same reason, I think it would be held, that a port in Scotland, is not a home port for an English vessel. That this is the prevailing opinion with legal men in England, I infer from the language of Mr. Abbot, who says, that he apprehends that "the whole of England," not the whole of Britain, "is considered for this purpose, as the residence of an Englishman." I infer it, too, from the general language of other cases, and particularly of Wood v. Hamilton [unreported] which was a case from Scotland, decided in the house of lords, and is mentioned by Abbot. These cases show conclusively, that by the law of England, it is not necessary that a vessel should be without the realm to authorize the master to hypothecate her for repairs, or other necessaries, to enable her to prosecute her voyage. The same principle, applied to the United States, requires, I think, that a port in one state should not be considered as the place of residence of owners, who live in another state. This rule of maritime law, originates in the principle, that in the absence of the owner, the master is, by himself, substituted for him; that he is entrusted with the vessel for the purpose of performing the voyage, and must necessarily act for the owner in all cases where he is incapable of acting for himself. The rule has no connexion with territory, or with jurisdiction. In reason, then, the power should exist whenever the necessity exists: and where there is no positive law modifying a rule thus originating, it would seem strange to insist, that the power of the master to act because the owner is absent, should not commence with his voyage, but should commence only on his passing the limits of the nation, however wide, or however narrow, those limits might be. It would be strange, if a vessel belonging to Eastport, might be hypothecated by the master in the port of St. Andrews, because the owner was absent, and yet could not be hypothecated at New Orleans, St. Louis, or the mouth of the Columbia.[6]

The reason of the case, then, concurs with the practise of maritime nations, in declaring that the owner cannot be considered as present in every port belonging to the nation, but that some subdivisional line, as the districts in France, must be taken, on passing which, the power of the master commences. If every port, except that in which the owner actually resides, be not for this purpose, a foreign port,

---

5 Abb. Shipp., 151.

6 In the case of The General Smith (4 Wheat. [17 U. S.] 438; 4 Con. Rep. Sup. Ct. U. S. 593) Mr. Justice Story said, that where repairs have been made, or necessaries have been furnished to a foreign ship, or to a ship in a port of the state to which she does not belong, the general maritime law, following the civil law, gives the party a lien on the ship itself for his security; and he may well maintain a suit in rem, in the admiralty, to enforce his right. But, in respect to repairs and necessaries, in the port or state to which the ship belongs, (which was the case before the court), the case is governed altogether by the municipal law of the state; and no lien is implied, unless it is recognized by that law. This last proposition is also laid down by Hopkins, J., in the case of Harper v. New Brig [Case No. 6090].

I perceive no rule more proper in this country, no rule better adapted to our situation, and to the reason of the thing, than to say, that the power of the master to hypothecate, exists in every port out of the state in which the owner resides, where he has no agent. I am, therefore, of opinion, that a vessel belonging to the port of Richmond in Virginia, may be hypothecated in the port of New York by the master, for necessary repairs, if the owner have no agent in New York. This power is unquestionably limited by the necessity in which it originates. The money for which the bond is taken must be advanced on the faith of the bottom, and must be necessary to enable the vessel to prosecute her voyage.[7] Both these circumstances are proved in this case, if the witness is to be believed. I do not think myself at liberty to discredit him. His character is unimpeached, and I do not see any intrinsic impossibility in his statement. He might know all that he asserts himself to know. I cannot resist the suspicion, that these expenses were too considerable, and that the master has not been faithful to his owner. But this case presents no testimony, which will authorize a court to indulge this suspicion. There is no testimony, whatever, which questions any one item of the account on which the hypothecation was made, and every item of that account is proved.

It has been argued, that the owner might have had an agent in New York. I should rather think, that negative proof, on this point, ought not to be required from the person who advances the money; but if it ought, Mr. Selden's letter of the 24th of February, states expressly that he had no agent there.[8] It is said, that the vessel remained in New York long enough to have consulted the owner. The time of her arrival is not mentioned. The first advance was made on the 10th of February, and the instrument of hypothecation is dated on the 17th. The evidence is, that the advance was made on a contract of hypothecation, and this is supported by Mr. Selden's letter of the 24th, in which he acknowledges a letter of the 16th, giving notice of the fact. That letter, too, contains an express assumpsit of the debt.

I do not perceive any just objection, in law, to the account, and as the proof establishes both the necessity of the repairs, and the fact that the advance was made on the credit of the bottom, the judgment must be affirmed with costs.

---

SELDEN (SMITH v.). See Case No. 13,104.

SELDON (EQUITABLE TRUST CO. v.). See Case No. 4,508.

---

[7] The Aurora [supra]; The Virgin, 8 Pet. [33 U. S.] 538; The Lavinia v. Barclay [supra]; Walden v. Chamberlain [Case No. 17,055]; Crawford v. The William Penn [Id. 3,373]; Patton v. The Randolph [Id. 10,837].

[8] Philips v. Ledley [Id. 11,096].